**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

ROBERT C. KOPPLE,

Plaintiff,

vs.

SCHICK FARMS, LTD.; EDWARD W. SCHICK, in his capacity as President of SCHICK FARMS, LTD.; and EDWARD W. SCHICK, individually,

Defendants/Third-Party Plaintiffs,

vs.

GREG SCHONEMAN and SCHONEMAN REALTORS, INC.,

Third-Party Defendants.

No. C05-3003-MWB

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS AND THIRD-PARTY DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

---

## TABLE OF CONTENTS


***I. INTRODUCTION AND BACKGROUND*** . . . . . . . . . . . . . . . . . . . . . . . . . 2
- ***A. Procedural Background*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
- ***B. Factual Background*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

***II. LEGAL ANALYSIS*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
- ***A. Standards For Summary Judgment*** . . . . . . . . . . . . . . . . . . . . . . 12
- ***B. The Schick Defendants' Motion For Summary Judgment*** . . . . . . . . . 14
  - ***1. Letter of intent as binding contract*** . . . . . . . . . . . . . . . . . . 14
    - ***a. Applicable contract law*** . . . . . . . . . . . . . . . . . . . . . . 15
    - ***b. Analysis of letter of intent*** . . . . . . . . . . . . . . . . . . . . 18

*2. Breach of oral contract claim* . . . . . . . . . . . . . . . . . . . . . 21
*3. Claim regarding covenant of good faith and fair dealing* . . . 28
*C. Third-Party Defendants' Motion For Summary Judgment* . . . . . . . . . 29

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34


## *I. INTRODUCTION AND BACKGROUND*

### *A. Procedural Background*

On June 1, 2006, plaintiff Robert C. Kopple filed a Second Amended and Substituted Complaint against Schick Farms, Ltd. ("Schick Farms") and Edward W. Schick, in both his individual capacity and as President of Schick Farms (collectively, "the Schick defendants"). This lawsuit is centered on Kopple's attempt to purchase certain farm land owned by Schick Farm. Specifically, in his Second Amended and Substituted Complaint, Kopple asserts claims for breach of contract, breach of oral contract, and breach of implied covenant of good faith and fair dealing. The Schick defendants have in turned filed a First Amended Third-Party Complaint against Greg Schoneman and Schoneman Realtors, Inc. (collectively, "the Schoneman third-party defendants"), the realtor and his real estate company who handled the sale of the farm land, for negligent misrepresentation, breach of fiduciary duty, and professional negligence.

The Schick defendants have moved for summary judgment on all claims. The Schick defendants assert that they are entitled to summary judgment on plaintiff Kopple's claim for specific performance because a letter of intent signed by Kopple and the Schick defendants does not constitute a binding contract as a matter of law. The Schick defendants also contend that the court should grant summary judgment in their favor with regard to Kopple's claim for breach of oral contract. The Schick defendants contend that Edward Schick never intended to be bound by an oral agreement but only by a final, written contract executed by both parties and that the summary judgment record does not establish that the parties concluded an oral agreement. Finally, the Schick defendants assert that Kopple's claim that they breached an implied covenant of good faith and fair dealing fails as a matter of law because no contract exists in this case upon which to base such a claim.

The Schoneman third-party defendants have also filed for summary judgment on the claims contained in the Schick defendants' First Amended Third Party Complaint. The Schoneman third-party defendants contend that if the Schick defendants are successful in their motion for summary judgment, on the question of whether the letter of intent constituted a binding contract, that the third party complaint against them should also be dismissed as a matter of law because such a decision would obviate the Schoneman third-party defendants' liability for indemnification and contribution. The Schoneman third-party defendants also contend that if the Schick defendants' Motion For Summary Judgment is granted then the Schoneman third-party defendants cannot be found to have made any improper representations regarding the binding effect of the letter of intent. Finally, the Schoneman third-party defendants assert that if the Schick defendants prevail on their motion for summary judgment then, as a matter of law, the Schoneman third-party defendants cannot be found to have been professionally negligent in providing services to

the Schick defendants.

The court held telephonic oral arguments on the Schick defendants and the Schoneman third-party defendants' respective motions for summary judgment on August 18, 2006. At the oral arguments, plaintiff Kopple was represented by Theodore C. Sims II of Whitfield & Eddy, P.L.C., Des Moines, Iowa. The Schick defendants were was represented by Jason C. Palmer of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, Iowa. The Schoneman third-party defendants were represented by James W. Redmond of Heidman, Redmond, Fredregill, Patterson, Plaza, Dykstra & Prahl, L.L.P., Sioux City, Iowa. The court turns first to a discussion of the undisputed facts as shown by the record, then to the standards applicable to motions for summary judgment and, finally, to the legal analysis of the merits of both the Schick defendants and the Schoneman third-party defendants' respective motions for summary judgment.

### *B. Factual Background*

The summary judgment record reveals that the following facts are undisputed. Plaintiff Robert C. Kopple is an individual residing in Los Angeles County, California. Defendant Edward Schick is an individual resident of Clear Lake, Iowa. At all times relevant to this litigation, Schick was the President of Schick Farms, Ltd. ("Schick Farms"). Schick Farms is an Iowa Corporation with its principal place of business in Clear Lake, Iowa. Third-party defendant Gregory Schoneman is an individual residing in Garner, Iowa. Third-party defendant Schoneman Realtors, Inc., is an Iowa Corporation with its principal place of business in Garner, Iowa.

Schick grew up in Clear Lake, Iowa, graduating from high school in 1974. Schick attended the University of Iowa and in 1978 obtained a degree in Business Administration with a major in accounting. Schick passed the CPA exam in May of 1978 and was

licensed to practice public accounting from then until 1982 in the state of Minnesota. From 1978 to 1982, Schick worked for the accounting firm of Arthur Anderson & Company in its Minneapolis, Minnesota office as an auditor. Schick later received a job offer from Medical, Incorporated, a client he was auditing, to be its director of finance. As director of finance, Schick was responsible for the accounting of Medical, Incorporated, and its relationships with lending institutions. In April of 1997, Schick was terminated from his employment with Medical, Incorporated because of the company's financial concerns. Schick was then hired as a regional controller for Browning-Ferris Industries, Inc., which was a company dealing in, among other things, waste management. Schick was eventually promoted to chief financial officer with respect to the operations of Browning-Ferris Industries, Inc., in Europe. In his position of CFO of Browning-Ferris Industries, Inc. (Europe), Schick was involved in the mergers and acquisitions of other companies.

Schick presently resides in Clear Lake, after moving back there in 2003. Prior to moving back to Clear Lake, Schick lived in Houston, Texas. While residing in Houston, Schick's wife died of melanoma. Schick has three sons: Edward who is 16 years old, Robert who is 14 years old, and Thomas, who is 8 years old.

Schick Farms was formed by Schick's mother and father to enable his parents to give shares of stock to their children on an annual basis utilizing the gift tax exclusion. Schick has two brothers, Steve and Dan, and two sisters, Sarah and Mary. Schick acquired his siblings' interest in Schick Farms at some point prior to 1995. Schick has owned all the stock in Schick Farms for approximately 10 years. Since Schick Farms' existence, it has owned the farms which it currently owns to date.

In 2003, Kopple first spoke to Schoneman regarding the sale of farmland in Cerro Gordo County, Iowa. In late October of 2003, Schick had a conversation with Greg

Schoneman's son, Chad Schoneman, regarding the sale of the farms owned by Schick Farms. The initial meeting with Chad Schoneman led to meetings in late 2003 with Greg Schoneman in which Greg Schoneman and Schick discussed the options for the sale of the farms or the stock in Schick Farms. Greg Schoneman contacted his long-time professional and social friend, Kopple, in the fall of 2003, to determine whether Kopple was interested in the purchase of stock in Schick Farms. Kopple became aware, through Schoneman, that Schick was selling two farms which were embodied in the Schick Farms business entity.

Kopple has been a practicing attorney for 36 or 37 years, graduating from DePaul University College of Law in 1965. Kopple received his L.L.M. in tax from New York University School of Law in 1968. Kopple was first employed by the law firm of Brawerman & Holcomb in 1968. Kopple practiced with the firm, which later was known as Brawerman & Kopple, until approximately the end of 1981. After 1981, Kopple became a partner at Mitchell, Silverberg & Knupp, a Los Angeles law firm, where he practiced for approximately 12 to 14 years. In 1994, Kopple formed a small law firm under the name Kopple & Klinger, where he practices to date. Family wealth planning constitutes the largest part of Kopple's practice, making up approximately 40 to 50 percent of his work. Income tax and business legal matters constitute the second largest area of his practice. Kopple estimates that less than ten percent of his practice is devoted to real estate transactions while mergers and acquisitions constitute ten percent of his practice. Kopple has spoken several times at seminars on various legal matters including tax and estate planning. Kopple has also written articles and chapters in legal treatises regarding such matters as tax and estate planning. In his practice, Kopple has drafted letters of intent for clients.

Kopple estimates that he is a shareholder, a member, or a partner in five to ten entities which own real property. Two of the entities in which Kopple is a partner or

member are K.F. Properties and K&S Properties. These two entities own between 11,000 and 13,000 acres of farmland in Iowa. K.F. Properties and K&S Properties started purchasing Iowa family farms in the late 1980's or early 1990's. Kopple estimates that Kopple's entities have used letters of intent in the negotiations to purchase real property three to five times. Kopple or his entities have not purchased stock in a corporation in which the corporation has owned only real property.

Kopple met Greg Schoneman in the mid-1980's when Schoneman assisted Kopple with Kopple's parents' farm. Schoneman has acted as Kopple's real estate agent and manages all of the farmland and real property that Kopple's entities own in the state of Iowa. Schoneman receives five percent of the gross revenue of each property as payment for his management services. Kopple and Schoneman are members in a limited liability company, Plaza De Companero, L.L.C., that owns a shopping plaza in Phoenix, Arizona. Kopple is the majority member of the units in Plaza De Companero, L.L.C. Schoneman has stayed with Kopple in his home in Los Angeles for a number of days. Kopple, Schoneman and their spouses have vacationed together in Hawaii. If the Schick transaction had been completed, Schoneman would have managed the Schick Farms. Schoneman has acted as a real estate agent for Kopple in approximately 75 real property transactions regarding the selling and purchasing of real property. Schoneman was acting as a dual agent for both Kopple and Schick with respect to Kopple's purchase of Schick Farms.

Discussions continued throughout the fall of 2003 and the winter of 2004, with regard to the possible purchase of stock in Schick Farms, between Kopple and Schoneman and Schoneman and Schick. Kopple initially thought of making an offer of approximately $1,500,000 or $1,600,000 to purchase the farmland embodied in the stock of Schick Farms. On March 23, 2004, Schoneman relayed to Kopple the potential asking price of $1.9 million for the stock in Schick Farms by Schick. Kopple believes that the transaction

to purchase the stock in Schick Farms was complicated and complex for a farm purchase given the tax and other issues presented. Kopple does not recall having any conversations with Schoneman regarding Schoneman being the dual agent for him and Schick.

The negotiations to purchase the stock in Schick Farms was discontinued in the spring of 2004 because Kopple did not want to pay what Schick wanted and Schick did not want to sell the stock at a price Kopple was willing to pay. The negotiations concerning the purchase of the stock in Schick Farms commenced again in July of 2004. Kopple offered to pay $1.9 million for the stock in Schick Farms because Schoneman persuaded him to offer more. It was Kopple's idea to have a letter of intent drafted with regard to the purchase of the stock in Schick Farms. Kopple did not provide Schoneman with a template with which to draft the letter of intent nor did Kopple provide Schoneman with copies of prior letters of intent that had been drafted by Kopple or his law firm to assist Schoneman in drafting the letter of intent regarding the sale of Schick Farms. Kopple told Schoneman specific items he wanted covered in the letter of intent. Kopple recognized that Schoneman had little experience in drafting letters of intent. Schoneman was acting as a scrivener for Kopple in drafting the letter of intent. Some drafts of the letter of intent were exchanged between Kopple and Schoneman before the letter of intent was presented to Schick.

The first draft of the letter of intent that was provided to Schick is dated July 27, 2004. The changes of the July 27th letter of intent by Schoneman revolved around the tenant in common properties and the potential tax liability Schick would sustain as a result of the transaction. The next draft of the letter of intent is dated August 2, 2004. This was followed by a draft of the letter of intent dated August 17, 2004. The executed letter of intent is dated August 25, 2004, and was signed by Schick on August 27, 2004 and Kopple on August 31, 2004. On August 30, 2004, Schoneman forwarded a facsimile to John

Duffy, Kopple's local Mason City attorney, asking Duffy to review the letter of intent to determine if there were any problems with it before Kopple executed it. Schick did not have an attorney review the Letter of Intent Prior to executing the document. Schoneman did not discuss with Schick that the document was a binding contract. Kopple believes that he was paying a "top dollar for the property. . . " Defendants' App. at 0099.

Paragraph 4 of the August 25, 2004, letter of intent lists a purchase price of $1,900,000. Paragraph 5 states that the earnest money to be provided by the buyer was to be deposited upon execution of the final contract and not the letter of intent. Paragraph 9 of the August 25, 2004, letter of intent, entitled "Form of Contract", reads: "A form of Contract mutually acceptable to Buyer and Seller and legal in the state of Iowa shall be used." Defendants' App. at D0121. Paragraph 13 of the August 25, 2004, letter of intent, entitled "Indemnification by Seller", reads:

> Seller, Ed Schick will make representations and warranties typical of a stock sale (e.g., power to enter into agreement, due formation, qualification, stock 100% owned by Ed Schick, stock validity issued and non-encumbered, condition of business and assets, balance sheets, etc.); will also make tax-related representations and warranties listed on attached EXHIBIT B; and will personally indemnify purchaser for breach of any such representations of warranties, to be effective at close and Survive close.

Defendants' App. at D0122.

After the letter of intent was executed by Kopple and Schick Farms, Kopple contacted Duffy with regard to the stock transaction. Duffy was not involved in drafting the letter of intent.

Kopple wanted a letter of intent drafted because:

> In my business experience, it is wise to outline in a

> simple document the terms of a deal because in doing so you flesh out what the concerns and needs are of each party so that when a letter of intent is used, or a deal memorandum, it's a simpler and more effective way of outlining the nub of the deal so that each party can be sure that the principle conditions and terms are there.

Defendants' App. at D0091.

The letter of intent stated that the farm tenancy must be terminated. In late August or early September of 2004, Schick issued a notice of intent to terminate farm tenancy. Schick was advised by Schoneman that the farm tenancy must be terminated before September 1, 2004, or the lease would renew for another year.

The executed letter of intent did not mention any cash held by Schick Farms or any other assets held by Schick Farms other than the four real properties. Specifically, the letter of intent states: "There is no cash or assets other than the above four properties in the corporation and the corporation's only liability is approximately $650,000.00 owed on the tenant in common property in Murfreesboro, Tennessee." Defendants' App. at D0120. Under the letter of intent, the tenant in common properties would be part of the corporation at the time of closing. Schick signed the letter of intent as president of Schick Farms. He also signed the indemnification page of the letter of intent, but without any notation that he was doing so in his position as president of Schick Farms.

Schick knew that there would be a subsequent contract. Kopple admits that Schick personally should have signed the letter of intent so as to make it clear that both individuals were entering into all the terms and conditions. Paragraph 13 of the executed letter of intent does not set forth all of the representations and warranties Kopple wanted Schick to make. The executed letter of intent did not have attached Exhibit "A" as represented by paragraph 2. The signatures on the letter of intent are confusing and sloppy.

On September 22, 2004, John Duffy sent a draft of the stock acquisition agreement to Schoneman and Kopple. On October 12, 2004, an associate in Kopple's law firm provided Kopple with a memorandum regarding changes to the stock acquisition agreement. Duffy amended the stock acquisition agreement accordingly. On approximately October 18, 2004, Duffy forwarded the stock acquisition agreement to Schick. On October 22, 2004, Schick called Schoneman and stated that he had received the stock acquisition agreement and that "everything is fine." Defendants' App. at 0004. At the time, Schoneman was having lunch in Phoenix, Arizona with Kopple and Kopple's banker, James Morrow of Wells Fargo Bank in Mason City, Iowa. Schick also stated in the same conversation that he wanted Schoneman to forward the stock acquisition agreement to Schick's attorney, Greg Nicholas, and his CPA, Diane McNulty. Schoneman then informed Kopple: "That was good news. That was Ed Schick. Everything is fine on the documents. The transaction is a go." Plaintiff's App. at 0031. After Schoneman's telephone call with Schick, Schoneman called Duffy and requested that he forward the stock acquisition agreement to Nicholas and McNulty.

On October 25, 2004, the stock acquisition agreement was forwarded to Nicholas and McNulty. On November 11, 2004, Schick contacted Schoneman and stated that he was not going to close on the transaction. Also on November 11, 2004, Duffy was asked by Kopple and Schoneman whether the letter of intent was a binding document.

Kopple has always been assisted in purchasing Iowa farm land by Schoneman. Schoneman is a licensed real estate salesperson and broker in the state of Iowa. Kopple and Schick never spoke to one another regarding the transaction. Schoneman never explained the legality of the letter of intent to Schick nor did he explain to him that Kopple might try to enforce the document. Schick did not have his attorney review the letter of intent because he did not want to incur the legal fees for such a review when he believed

that the document was not a binding agreement. Schick did not sign earlier versions of the letter of intent because the terms of those drafts were unacceptable to him.

After the letter of intent was executed, Kopple asked Duffy to draft a formal stock acquisition agreement. Kopple was not certain whether there was furniture or other items owned by Schick Farms that would be excluded from the sale. On November 17, 2004, Kopple's attorney, Duffy, forwarded a letter to Schick's legal counsel, Nicholas, stating that the letter of intent was a binding document. On December 20, 2004, Duffy forwarded another letter to Nicholas indicating Kopple's intention with regard to the letter of intent. Kopple subsequently proposed to waive the representations and warranties and to close the stock purchase in accordance with the terms and conditions of the letter of intent. Schick rejected Kopple's proposal.

## *II. LEGAL ANALYSIS*

### *A. Standards For Summary Judgment*

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo*, 993 F. Supp. 1224, 1230-31 (N.D. Iowa 1998); *Dirks v. J.C. Robinson Seed Co.*, 980 F. Supp. 1303, 1305-07 (N.D. Iowa 1997); *Laird v. Stilwill*, 969 F. Supp. 1167, 1172-74 (N.D. Iowa 1997); *Rural Water Sys. #1 v. City of Sioux Ctr.*, 967 F. Supp. 1483, 1499-1501 (N.D. Iowa 1997), *aff'd in pertinent part*, 202 F.3d 1035 (8th Cir. 2000), *cert. denied*, 531 U.S. 820 (2000); *Tralon Corp. v. Cedarapids, Inc.*, 966 F. Supp. 812, 817-18 (N.D. Iowa 1997), *aff'd*, 205 F.3d 1347 (8th Cir. 2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.*, 965 F. Supp. 1237, 1239-40 (N.D. Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.*, 963 F. Supp. 805 (N.D. Iowa 1997). Thus, the court will not consider those standards in detail

here. Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

> Rule 56. Summary Judgment
>
> (a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.
>
> (b) For Defending Party. A party against whom a claim . . . is asserted . . . may, at any time, move for summary judgment in the party's favor as to all or any part thereof.
>
> (c) Motions and Proceedings Thereon. . . . *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED. R. CIV. P. 56(a)-(c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir. 1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995);

*Hartnagel,* 953 F.2d at 394. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir. 1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Quick*, 90 F.3d at 1377 (same). With these standards in mind, the court turns to consideration of the Schick defendants and the Schoneman third-party defendants' respective motions for summary judgment.

### *B. The Schick Defendants' Motion For Summary Judgment*

#### *1. Letter of intent as binding contract*

The Schick defendants initially contend that they are entitled to summary judgment on plaintiff Kopple's claim for breach of contract on the letter of intent because the letter of intent does not constitute a binding contract as a matter of law. The Schick defendants contend that, notwithstanding Edward Schick's signing of the letter of intent, the result was only an "agreement to agree," not a binding contract for the sale of Edward Schick's shares in Schick Farms. Kopple counters that the executed letter of intent was sufficiently definite so as to create an offer as a matter of law and that Edward Schick accepted that offer by signing the letter of intent. Thus, the crucial question here is whether or not the letter of intent constituted a binding contract. There are no genuine issues of material fact relating to that particular question, and to answer it requires an analysis of some basic principles of contract law. Therefore, the court begins its analysis with a review of the applicable contract law.

***a. Applicable contract law***

The Iowa Supreme Court has made clear that "'[a]ll contracts must contain mutual assent; mode of assent is termed offer and acceptance.'" *Heartland Express, Inc. v. Terry*, 631 N.W.2d 260, 268 (Iowa 2001) (quoting *Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 285 (Iowa 1995)). The court has also explained the requirements of an "offer" as follows:

> An offer is a "'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" [*Anderson*, 540 N.W.2d at 285] (quoting Restatement (Second) of Contracts § 24 (1979)). [Courts] determine whether an offer has been made objectively—not subjectively. *Id.* "'The test for an offer is whether it induces a reasonable belief in the recipient that [the recipient] can, by accepting, bind the sender.'" *Id.* at 286 (quoting *Architectural Metal Sys., Inc. v. Consol. Sys., Inc.*, 58 F.3d 1227, 1229 (7th Cir. 1995)).
>
> In applying this objective test of intent, "we look for terms with precise meaning that provide certainty of performance." *Id.* "[I]f an offer is indefinite, there is no intent to be bound." *Id.* [The court] must determine whether the terms of [the purported offer] were "sufficiently definite" so as to constitute an offer. *See Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 203 (Iowa 1997). Such a determination is a question of law. *See id.*
>
> . . . . We noted in *Anderson* that
>
> > "a lack of essential detail would negate such a belief [of intent], since the sender could not reasonably be expected to empower the recipient to bind him to a contract of unknown terms. . . . [T]he recipient of a hopelessly vague offer should know that it was not intended to be an offer that could be made legally enforceable by being accepted."
>
> 540 N.W.2d at 286 (quoting *Architectural Metal Sys.*, 58 F.3d at 1229).

*Heartland Express, Inc.*, 631 N.W.2d at 268-69; *accord Magnusson Agency v. Public Entity Nat'l Co.-Midwest*, 560 N.W.2d 20, 26 (Iowa 1997) (citing the same standards for contract formation and what constitutes an offer). Thus, the terms of a contract are sufficiently definite if the court can determine with reasonable certainty the duty of each party and the conditions relative to performance. *Severson v. Elberon Elevator, Inc.*, 250 N.W.2d 417, 420 (Iowa 1977); *accord Air Host Cedar Rapids v. Airport Comm'n*, 464 N.W.2d at 450, 453 (Iowa 1990) ("It is axiomatic that understandable or ascertainable terms are necessary ingredients for an enforceable contract."). Indicia that an offer was *not* intended may come from various aspects of the document in question, including the title of the document and any disclaimers of intent that the document constitute an offer. *Heartland Express, Inc.*, 631 N.W.2d at 269.

Similarly, "[a] binding contract requires an acceptance of an offer." *Id.* at 270 (citing *Magnusson*, 560 N.W.2d at 26). "An '[a]cceptance of an offer is a manifestation of assent to the terms thereof by the offeree in a manner invited or required by the offer.'" *Id.* (quoting RESTATEMENT (SECOND) OF CONTRACTS § 50). "Acceptance" of an "offer" does not make a contract, unless the "acceptance" is communicated to the offeror. *Id.*

An "offer and acceptance" resulting in a binding contract must be contrasted with a mere "agreement to agree." The Iowa Supreme Court has reiterated that "[a]n 'agreement to agree to enter into a contract is of no effect unless all of the terms and conditions of the contract are agreed on and nothing is left to future negotiations.'" *Scott v. Grinnell Mut. Reinsurance Co.*, 653 N.W.2d 556, 562 (Iowa 2002) (quoting *Crowe-Thomas Consulting Group, Inc. v. Fresh Pak Candy Co.*, 494 N.W.2d 442, 444-45 (Iowa Ct. App. 1992)); *Whalen v. Connelly*, 545 N.W.2d 284, 293 (Iowa 1996) ("A contract is however generally not found to exist when the parties agree to a contract on a basis to be

settled in the future.") (citing *Air Host Cedar Rapids v. Airport Comm'n*, 464 N.W.2d 450, 453 (Iowa 1990)). For example, the Iowa Court of Appeals concluded that a letter specifying that it was "a letter of interest only and is subject to the negotiation and execution of a definitive agreement" and inviting the recipients "to sign copies of the letter and turn this matter over to our respective attorneys for purposes of forming a definite contract" was "nothing more than an invitation to attempt to reach an agreement of sale," not an enforceable contract based on offer and acceptance. *Crowe-Thomas Consulting Group, Inc.*, 494 N.W.2d at 444-45. The court reached this conclusion not merely on the basis of the language of the letter, which the court observed might "ordinarily" be dispositive, but based on construction of the purported offer and acceptance "with all of the provisions of the contract and the accompanying letters which were made a part of the record." *Id.* at 445. Similarly, the Iowa Supreme Court concluded that only an unenforceable agreement to agree was presented where one sentence appearing to accord a full and unambiguous right was coupled with a second sentence making it clear that whatever was granted in the first sentence was subject to future negotiations and agreement by both parties. *Air Host Cedar Rapids*, 464 N.W.2d at 453.

The Iowa Supreme Court has also instructed that factors bearing on whether a contract has been concluded include the following:

> "the extent to which express agreement has been reached on all the terms to be included, whether the contract is of a type usually put in writing, whether it needs a formal writing for its full expression, whether it has few or many details, whether the amount involved is large or small, whether it is a common or unusual contract, whether a standard form of contract is widely used in similar transactions, and whether either party takes any action in preparation for performance during the negotiations."

*Horsfield Const., Inc. v. Dubuque County, Iowa*, 653 N.W.2d 563 (Iowa 2002) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 27 cmt. c )..

***b. Analysis of letter of intent***

The court first notes that the language of the letter of intent clearly contemplates a subsequent, final contract. Paragraph 9 of the letter of intent reads as follows:

> 9. Form of Contract: A form of Contract mutually acceptable to Buyer and Seller and legal in the state of Iowa.

Defendants' App. at 0121. Some courts have held that a writing which clearly contemplates the subsequent execution of a formal agreement gives rise to an inference that the parties to the writing did not intend to be bound until the subsequent formal agreement is finalized. *See Gel Sys., Inc. v. Hyundai Eng'g & Constr. Co*, 902 F.2d 1024, 1027 (1st Cir. 1990) (noting that under Massachusetts law, "the fact that a writing specifically contemplates the future execution of a formal contract gives rise to a "strong inference" that the parties do not intend to be bound until the formal document is hammered out.*")*; *Mass Cash Register, Inc. v. Comtrex Sys. Corp.*, 901 F. Supp. 404, 416 (D. Mass. 1995) (holding that where the parties contemplate the formal execution of a final agreement, there is a "strong inference" that the parties "'do not intend to be bound by earlier negotiations or agreements until the final terms are settled.'") (citations omitted); *see also Crowe-Thomas Consulting Group, Inc.*, 494 N.W.2d at 444-45 (holding no enforceable contract where letter specified it was "a letter of interest only and is subject to the negotiation and execution of a definitive agreement. . . "); *Air Host Cedar Rapids, Inc. v. Cedar Rapids Airport Comm'n*, 464 N.W.2d 450, 453 (Iowa 1991) (holding contact did not exist where document was subject to future negotiations and agreement by both parties); *Diesel Power Equip., Inc. v. ADDCO, Inc.*, 377 F.3d 853, 857 (8th Cir. 2004) (in holding that letter of

intent entered into by the parties was not sufficiently definite to constitute a binding contract, court noted that parties continued to negotiate and prepare subsequent documents including a draft asset purchase agreement); *Brown v. Cara*, 420 F.3d 148, 153 (2nd Cir. 2005) ("'Ordinarily, where the parties contemplate further negotiations and the execution of a formal instrument, a preliminary agreement does not create a binding contract.'") (quoting *Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 548 (2d Cir. 1998)); *Empro Mfg. Co. v. Ball-Co Mfg., Inc.*, 870 F.2d 423, 424 (7th Cir. 1989) (concluding that a letter of intent was not binding where the letter set forth "the general terms and conditions" of the proposed sale and such terms were subject to "the satisfaction of certain conditions precedent to closing," including, but not limited to, the execution of a definitive asset purchase agreement and approval by the buyer's shareholders and board of directors).[1] Because it is undisputed here that the parties contemplated the execution of a final written agreement after the signing of the letter of intent, this circumstance provides a strong inference that the parties did not intend to be bound until the final terms were settled and a final contract was executed.

The notion that the parties contemplated no finality with the letter of intent but intended, instead, contemplated future negotiations, as the Schick defendants assert, is also supported by the fact that the letter of intent required the deposit of earnest money by Kopple only "upon execution of the final contract." Defendants' App. at 0121. In real

[1] In its *Gel Systems* decision, the First Circuit Court of Appeals also recognized, however, that reference to later execution of a formal document does not automatically compel the conclusion that the initial agreement is not binding. *Gel Sys., Inc.*, 902 F.2d at 1027. The court noted that "[i]f all material terms which are to be incorporated into a future writing have been agreed upon, it may be inferred that the writing to be drafted and delivered is a mere memorial of the contract already final by the earlier mutual assent of the parties to those terms." *Id.* at 1027-28 (internal quotation marks omitted).

estate transactions in Iowa, "[a]ll trust funds must be deposited into the broker's trust account by no later than five banking days after the date indicated on the document that the last signature of acceptance of the offer to purchase, rent, lease, exchange, or option is obtained." Iowa Admin. Code 193E-13.1(1). Although the parties here were actually negotiating the sale of Edward Schick's stock in Schick Farms, the major component of which was Iowa farm land, and thus not bound by this rule, the court, nonetheless, finds it instructive that Kopple did not intend to put his earnest money in trust until a "final contract" was negotiated and executed by the parties. This indicates that Kopple did not view the letter of intent as a formal contract to purchase the stock in Schick Farms.

Another fact which strongly suggests that the letter of intent was not intended to be a binding contact is that the document left a number of terms and conditions open for subsequent negotiation between Kopple and Schick. This is best exemplified by the fact that after the letter of intent was signed, Kopple had his attorney Duffy draft a 50 page Stock Acquisition Agreement, a document some ten fold greater in length than the letter of intent. Given that Kopple and the Schick defendants were negotiating the sale of the stock of Schick Farms, the terms and conditions of the stock acquisition comprised definite and essential terms of such a contract. Specifically, while paragraph 13 of the letter of intent mentions that "Edward Schick will make representations and warranties typical of a stock sale (e.g. power to enter into agreement, due formation, qualification, stock 100% owned by Ed Schick, stock validly issued and nonencoumbered, condition of business and assets, balance sheets, etc.). . .", Defendants' App. at 0015, the specifics of these representations and warranties were left for negotiation in the Stock Acquisition Agreement. The court notes that in the September 22, 2004, draft Stock Acquisition Agreement, the representations and warranties required of the Schick defendants runs sixteen pages in length, *see* Defendants' App. at 0129-0145, while in the October 18,

2004, Stock Acquisition Agreement the representations and warranties required of the Schick defendants runs fifteen pages in length. *See* Defendants' App. at 0181-0196. The absence of these essential terms and details in the letter of intent leaves the specifics of the Schick defendants' representations and warranties open for future negotiation. In essence, this demonstrates the letter of intent was not a binding contract but an agreement to agree in the future and that there is no contract here. *See D.H. Overmyer Co. v. Brown*, 439 F.2d 926, 930 (10th Cir. 1971) (holding that although a letter agreement was clear and unambiguous in requiring indemnification for undisclosed liabilities, the relevant paragraph was "uncertain and indefinite in that it did not specify what warranties, representations, and indemnification were 'appropriate.'"). Thus, the court concludes that the August 24, 2004, letter of intent constituted merely an agreement to a contract on a basis to be settled in the future. *See Air Host Cedar Rapids, Inc.*, 464 N.W.2d at 453 (noting that "[a] contract generally is not found to exist where the parties agree to a contract on the basis to be settled in the future."). Therefore, the court concludes that summary judgment is appropriate here against Kopple on his claim of breach of contract and this portion of the Schick defendants' motion For Summary Judgment is granted.

***2. Breach of oral contract claim***

The Schick defendants also seek summary judgment on Kopple's claim for breach of oral contract. The Schick defendants contend that Edward Schick never intended to be bound by an oral agreement but only by a final, written contract executed by both parties. They further assert that the evidence does not establish that the parties concluded an oral agreement. Kopple responds that genuine issues of material fact exist which preclude the granting of summary judgment on this issue. The Schick defendants respond that they accept, for the purposes of their summary judgment motion only, Kopple's allegations of what transpired during Edward Schick's October 27, 2004, telephone conversation with

Schoneman, but even assuming those facts, the summary judgment record does not establish that the parties concluded an oral contract.

Under Iowa law, an oral agreement may be enforceable, even if the parties intended to reduce it to writing, but never did so, if two conditions are met: (1) the agreement is complete as to its terms; and (2) the agreement is finally agreed to. *See Elkader Coop. Co. v. Matt*, 204 N.W.2d 873, 875 (Iowa 1973); *see also Severson v. Elberon Elevator, Inc.*, 250 N.W.2d 417, 420 (Iowa 1977); *Purina Mills, Inc. v. Bushman*, 2000 WL 1157836, *5 (Iowa Ct. App. Aug.16, 2000); *Davis v. Roberts*, 563 N.W.2d 16, 22 (Iowa Ct. App. 1997); *Employee Benefits Plus, Inc. v. Des Moines Gen. Hosp.*, 535 N.W.2d 149, 153-54 (Iowa Ct. App. 1995). The rationale for these decisions, the Iowa appellate court have explained, is that in such circumstances, "[a]ny written version of the agreement would have merely served as an expression of an agreement already made." *Davis*, 563 N.W.2d at 22; *Faught v. Budlong*, 540 N.W.2d 33 (Iowa 1995); *Employee Benefits Plus, Inc.*, 535 N.W.2d at 154. The Iowa Supreme Court has noted that:

> "It is generally held an oral agreement may be enforceable, even though the parties contemplate that it be reduced to writing and signed, if it is complete as to its terms and has been finally agreed to. Under such circumstances the writing is merely an expression of a contract already made. On the other hand, the parties may intend that obligation should arise *only* upon the signing of a written instrument embodying the terms they have tentatively agreed to."

*Faught*, 540 N.W.2d at 35-36 (emphasis in original) (quoting *Elkader Coop. Co.*, 204 N.W.2d at 875).

In *Faught*, the Iowa Supreme Court was confronted with the issue of whether negotiations over a mortgage dispute had ripened into an oral contract. *Faught*, 540 N.W.2d at 33. A jury returned a verdict finding an enforceable oral contract and breach

of that contract, but the district court granted judgment notwithstanding the verdict. *Id.* at 35. The Iowa Supreme Court looks with approval to the comments to Section 27 of the Restatement (Second) of Contracts for guidance on the question of whether negotiations had ripened into an oral contract:

> Comments a and b to section 27 of the Restatement (Second) of Contracts pertinently provide:
>
>> a. Parties who plan to make a final written instrument as the expression of their contract necessarily discuss the proposed terms of the contract before they enter into it and often, before the final writing is made, agree upon all the terms which they plan to incorporate therein. This they may do orally or by exchange of several writings. It is possible thus to make a contract the terms of which include an obligation to execute subsequently a final writing which shall contain certain provisions. If parties have definitely agreed that they will do so, and that the final writing shall contain these provisions and no others, they have then concluded the contract.
>>
>> b. On the other hand, if either party knows or has reason to know that the other party regards the agreement as incomplete and intends that no obligation shall exist until other terms are assented to or until the whole has been reduced to another written form, the preliminary negotiations and agreements do not constitute a contract.
>
> *See also Continental Labs., Inc. v. Scott Paper Co.*, 759 F. Supp. 538, 540 (S.D. Iowa 1990)(citing with approval comment b ).
>
> This court has embraced the principles enunciated in both comments:

> It is generally held an oral agreement may be enforceable, even though the parties contemplate that it be reduced to writing and signed, if it is complete as to its terms and has been finally agreed to. Under such circumstances the writing is merely an expression of a contract already made. On the other hand, the parties may intend that obligation should arise only upon the signing of a written instrument embodying the terms they have tentatively agreed to.

*Elkader Coop. Co. v. Matt*, 204 N.W.2d 873, 875 (Iowa 1973) (citations omitted).

The Restatement also sets out the factors considered in determining whether a binding agreement has been reached:

> Among the circumstances which may be helpful in determining whether a contract has been concluded are the following: the extent to which express agreement has been reached on all the terms to be included, whether the contract is of a type usually put in writing, whether it needs a formal writing for its full expression, whether it has few or many details, whether the amount involved is large or small, whether it is a common or unusual contract, whether a standard form of contract is widely used in similar transactions, and whether either party takes any action in preparation for performance during the negotiations. Such circumstances may be shown by oral testimony or by correspondence or other preliminary or partially complete writings.

RESTATEMENT (SECOND) OF CONTRACTS § 27 cmt. c (1979). *See also Continental Labs., Inc.*, 759 F. Supp. at 541-42 (citing factors in comment c and finding as a matter of law based on these factors that defendant intended to be bound only by a written agreement signed by both parties; court therefore

> concluded no binding agreement ever existed and sustained defendant's motion for summary judgment); *Severson v. Elberon Elevator, Inc.*, 250 N.W.2d 417, 421 (Iowa 1977) (citing most of the same factors).

*Faught*, 540 N.W.2d at 35-36.[2]

The Eighth Circuit Court of Appeals has instructed that:

> "In order to find that an oral contract existed, there must be sufficient evidence of its terms to ascertain the duties and conditions established." *Aldus v. Sabre Communications Corp.*, 554 N.W.2d 868, 871 (Iowa 1996). Generally, whether the parties intend an oral agreement to be binding or whether they did not intend to be bound until they executed a written agreement is a question of fact dependent upon all the circumstances present in the particular case. *Elkader*, 204 N.W.2d at 875. Even though the existence of an oral contract is usually a question of fact, judgment as a matter of law is

---

[2]The text of Section 27 of the Restatement (Second) of Contracts, which does not appear in the *Faught* decision, and consequently was not discussed directly in that decision, provides as follows:

> § 27. Existence of Contract Where Written Memorial Is Contemplated
>
> Manifestations of assent that are in themselves sufficient to conclude a contract will not be prevented from so operating by the fact that the parties also manifest an intention to prepare and adopt a written memorial thereof; but the circumstances may show that the agreements are preliminary negotiations.

RESTATEMENT (SECOND) OF CONTRACTS § 27 (1979). Thus, while § 27 recognizes the possibility that negotiations may ripen into an oral contract, even where the parties contemplate a written contract as the goal of the negotiations, this section also recognizes that whether or not this happens depends upon the unique circumstances of each case.

> appropriate if a party has not offered sufficient evidence to support the existence of a contract. *See, e. g., Faught*, 540 N.W.2d at 40 (length of negotiations, number of proposal and counterproposal, and distrust between parties indicate that no reasonable person would find that a contract existed); *Defy v. Rhum*, 462 N.W.2d 742, 746 (Iowa App. 1990) (where purchase agreement clearly stated that party must sign in order to be bound, no oral contract possible).

*Scalier Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 743 (8th Cir. 2002).

Upon consideration of the factors found in Restatement (Second) of Contracts, comment c, the court concludes that, on the summary judgment record before it, no genuine issue of material fact has been generated as to whether the parties intended to be bound to the stock purchase agreement prior to the execution of a writing. As the court noted above, "[generally, whether the parties intend an oral agreement to be binding or whether they did not intend to be bound until they executed a written agreement is a question of fact dependent upon all the circumstances present in the particular case." *Scalier Tel. Co.*, 298 F.3d at 743; *see Elkader*, 204 N.W.2d at 875. Here, the court notes that the parties dispute what transpired during the October 27, 2004, telephone conversation between Edward Schick and Greg Schoneman. Kopple contends that Schick stated the following during that conversation: "I've read though all the documents that Mr. Duffy prepared, the stock acquisition agreement. Everything is fine. You can now go ahead and send that to Mr. Nicholas and to Diane McNulty." Plaintiff's App. at 0030. Viewing this statement in the light most favorable to Kopple and giving him the benefit of all reasonable inferences that can be drawn from it, *see Matsushita Elec. Indus. Co.*, 475 U.S. at 587, the court concludes that no reasonable fact finder could find that Schick was orally accepting the terms of the stock acquisition agreement.

The court notes that several of the factors found in comment c to § 27 weigh

strongly against any finding of an oral contract here. First, the matter was a complex undertaking, the purchase of all the stock in a closely held corporation for close to $2,000,000. The nearly $2,000,000 price tag for the stock transfer was a large sum of money. One would reasonably anticipate a written accord for such an undertaking. Moreover, the stock acquisition agreement itself is highly detailed, running some 45 pages in length. The court also finds it significant that even under Kopple's version, Edward Schick directed that the stock acquisition agreement be forwarded to his attorney and tax advisor. There would be no need for his attorney and tax advisor to have unsigned copies of the stock acquisition agreement if Edward Schick had already agreed to its terms. The conclusion is further supported by the fact that the parties' legal counsels' correspondence after October 22, 2004 makes no reference to any oral contract, but only the letter of intent. Thus, this correspondence belies the existence of an oral contract between the parties. *See Whalen v. Connelly*, 545 N.W.2d 284, 293 (Iowa 1996) (noting that events which occur after negotiation of the putative oral contract may be considered in determining whether the parties entered into oral agreement). Finally, the summary judgment record is devoid of evidence that either party took actions in reliance on the purported oral agreement. For instance, even though the letter of agreement called for Kopple to make a $50,000 deposit of earnest money "upon execution of the final contract," Defendants' App. at D0121, there is no showing that any such deposit was made by Kopple even though he asserts that the parties' reached on oral contract.

Thus, upon consideration of all applicable factors, the court concludes that "reasonable minds could only conclude that both parties contemplated a written and signed agreement before either would be bound." *See Faught*, 540 N.W.2d at 39-40. Therefore, because no reasonable jury would conclude, even taking all the evidence in the light most favorable to Kopple, that the parties had concluded an oral contract, this portion of the

Schick defendants' Motion for Summary Judgment is also granted.

*3. Claim regarding covenant of good faith and fair dealing*

The Schick defendants further seek summary judgment on Kopple's claim that they breached an implied covenant of good faith and fair dealing. The Schick defendants asserts that Kopple's claim fails as a matter of law because no contract exists in this case upon which to base such a claim. Kopple counters that he has generated genuine issues of material fact which preclude the granting of summary judgment on his claim for breach of an implied covenant of good faith and fair dealing.

Under Iowa law, a covenant of good faith and fair dealing is implied in every contract, imposing on each party to the contract a duty of good faith and fair dealing in the performance and enforcement of that contract. *See Engstrom v. State*, 461 N.W.2d 309, 314 (Iowa 1991); *Horton v. Uptown Partners, L.P.*, No. 05-0982, 2006 WL 1279044, at *3 (Iowa Ct. App. May 10, 2006) (table opinion); *Vlieger v. Farm for Profit, Research and Dev., Inc.*, 705 N.W.2d 339, *3 (Iowa Ct. App. Aug. 17, 2005) (table opinion); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 205, at 99 (1981). The Iowa Court of Appeals recently noted that:

> "The underlying principle is that there is an implied covenant that neither party [to a contract] will do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."

*Horton*, No. 05-0982, 2006 WL 1279044, at *3 (quoting 13 RICHARD A. LORD, WILLISTON ON CONTRACTS § 38:15, at 437 (4th ed. 1999)). The court further noted that:

> generally the implied covenant of good faith and fair dealing operates upon an express condition of a contract, the occurrence of which is largely or exclusively within the control of one of the parties. WILLISTON ON CONTRACTS § 38.15, at 435. The implied covenant requires the party in control to

> exercise their express discretion in a manner which avoids harm to the other party. *See Warner v. Konover*, 553 A.2d 1138, 140-41 (Conn. 1989) (holding that where a commercial lease requires landlord's consent before assigning the lease or subletting the leased premises, implied covenant prohibited landlord from withholding consent unreasonably); *c.f. Retrofit Partners I, L.P. v. Lucas Industries, Inc.*, 201 F.3d 155, 162 (2nd Cir. 2000) (stating that because the agreement did not require defendant to decide whether or not to invest in plaintiff's enterprise, defendant's failure to make either choice in a timely fashion did not violate the implied covenant of good faith and fair dealing).

*Horton*, No. 05-0982, 2006 WL 1279044, at *3. This covenant is breached when a party to a contract acts in a manner that is offensive to "community standards of decency, fairness and reasonableness." *Kooyman v. Farm Bureau Mut. Ins. Co.*, 315 N.W.2d 30, 34 (Iowa 1982) (citing RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. a, at 100 (1981)).

The court need not tarry long on this portion of the Schick defendants' Motion For Summary Judgment since, for the reasons discussed above, the court has concluded that no genuine issues of material fact exist as to whether either an oral or written contract exists between the Schick defendants and Kopple. Given this state of affairs, the court concludes, as a matter of law, that Kopple cannot prevail on his claim for breach of an implied covenant of good faith and fair dealing. Therefore, this portion of the Schick defendants' Motion for Summary Judgment is also granted.

### *C. Third-Party Defendants' Motion For Summary Judgment*

The Schoneman third-party defendants seek summary judgment on the claims contained in the Schick defendants' First Amended Third Party Complaint. In their motion for summary judgment, the Schoneman third-party defendants contend that if the Schick

defendants are successful in their motion for summary judgment, on the question of whether the letter of intent constituted a binding contract, that the third party complaint against them should also be dismissed as a matter of law. The Schoneman third-party defendants also contend that if the Schick defendants' Motion For Summary Judgment is granted then the Schoneman third-party defendants cannot be found to have made any improper representations regarding the binding effect of the letter of intent. Finally, the Schoneman third-party defendants assert that if the Schick defendants prevail on their motion for summary judgment then, as a matter of law, the Schoneman third-party defendants cannot be found to have been professionally negligent in providing services to the Schick defendants. The Schick defendants vigorously contest most of the contentions made by the Schoneman third-party defendants. Thus, the court must address the effect of its granting that part of the Schick defendants' Motion For Summary Judgment regarding Kopple's claim for breach of contract over the letter of intent. The court will begin its analysis with a review of the specific claims made by the Schick defendants in their First Amended Third-Party Complaint.

In Count 1 of the First-Amended Third-Party Complaint, the Schick defendants assert a claim of negligent misrepresentation against the Schoneman third-party defendants alleging that the Schoneman third-party defendants "negligently supplied information to Schick and Schick Farms regarding the Letter of Intent in that it was not a binding contract for the sale of stock of Schick Farms." First Am. Third-Party Compl. at 7. In Count II of the First-Amended Third-Party Complaint, the Schick defendants assert a claim of breach of fiduciary duty, asserting that the Schoneman third-party defendants breached their fiduciary duty in the following six ways:

(1) failing to fully disclose his relationship with the buyer, Kopple;

(2) failing to properly execute and explain the dual agency agreement as required by Iowa Code Chapter 543B;
(3) drafting the Letter of Intent;
(4) failing to properly explain the legal ramifications of the Letter of Intent;
(5) stating the Letter of Intent was a non-binding document; and
(6) placing the interests of Kopple ahead of the Defendants/Third Party Plaintiffs.

First Am. Third-Party Compl. at 9. Finally, in Count III of the First-Amended Third-Party Complaint, the Schick defendants assert a claim of professional negligence, asserting that the Schoneman third-party defendants were negligent in their representation of the Schick defendants in the following six respects:

(1) failing to fully disclose his relationship with the buyer, Kopple;
(2) failing to properly execute and explain the dual agency agreement as required by Iowa Code Chapter 543B;
(3) drafting the Letter of Intent;
(4) failing to properly explain the legal ramifications of the Letter of Intent;
(5) stating the Letter of Intent was a non-binding document; and
(6) placing the interests of Kopple ahead of the Defendants/Third Party Plaintiffs.

First Am. Third-Party Compl. at 10-11.

As noted above, the Schoneman third-party defendants contend that if the Schick defendants are successful in their motion for summary judgment, on the question of whether the letter of intent constituted a binding contract, that the third party complaint against them should also be dismissed as a matter of law. The Schick defendants concede that the court's granting of summary judgment on the breach of contract claim against them would render

moot their claim against the Schoneman third-party defendants for not informing them that the letter of intent was a binding contract but argue that their other claims for breach of fiduciary duty and professional negligence survive because those allegations are not based on their assertion that Greg Schoneman informed the Schick defendants that the letter of intent was a non-binding document. Given the Schick defendants' concession, the court grants the Schoneman third-party defendants' Motion For Summary Judgment as to Count I and those parts of Counts II and III which are grounded on assertions that the Schoneman third-party defendants were negligent or breached a fiduciary duty by informing the Schick defendants that the letter of intent was a non-binding document and failed to properly explain the legal ramifications of the letter of intent.

This leaves open the question of whether the Schick defendants' other claims for breach of fiduciary duty and professional negligence remain viable following the court's granting of that portion of the Schick defendants' Motion For Summary Judgment on the breach of contract claim against them. The Schoneman third-party defendants assert that if the Schick defendants are successful in their motion for summary judgment, regarding the breach of contract claim, that the Schick defendants cannot establish a breach of duty, proximate causation or damages with respect to their claims against them. The Schick defendants respond that a number of unresolved issues of material fact preclude the granting of summary judgment on their remaining claims. The Schick defendants contend that the Schoneman defendants failed to adequately advise them of the fact that Schoneman was acting as an agent for both the Schick defendants and Kopple, and that, as a result of this failure to disclose, the Schick defendants did not consult an attorney as to the legal effects of the letter of intent. The Schick defendants assert that if this had been done, this litigation could have been avoided. The Schick defendants further assert that the Schoneman defendants were negligent in their drafting of the letter of intent because they failed to

include an express provision that the letter of intent was non-binding, and that had such a clause been inserted in that document  no dispute as to the letter of intent's binding effect would have resulted.

The court notes that under Iowa law, issues of negligence and proximate cause are to be determined by the trier of fact. *See Nichols v. Westfield Indus., Ltd.*, 380 N.W.2d 392, 398 (Iowa 1985) ("Questions of negligence, contributory negligence, and proximate cause are ordinarily for the trier of fact and even when the facts are not in dispute, if reasonable minds might draw different inferences from the evidence a question of fact is engendered."); *Casey v. Koos*, 323 N.W.2d 193, 198 (Iowa 1982) ("Ordinarily negligence, contributory negligence, and proximate cause are jury questions. Only in exceptional cases are they decided as matters of law."). In the present case, the circumstances do not warrant a finding of that the Schoneman third-party defendants have established that they were not professionally negligent as a matter of law. Rather, from the court's review of the record, the remaining claims against the Schoneman third-party defendants are not wedded to the dispute over whether Greg Schoneman told the Schick defendants that the letter of intent was not binding. Specifically, viable issues of controversy still exist over: whether Greg Schoneman was negligent in the drafting of the letter of intent; whether Greg Schoneman failed to adequately advise the Schick defendants regarding his dual agency; whether Greg Schoneman disclosed his relationship with Kopple; and, whether, as a result of Greg Schoneman's relationship with Kopple, he placed the interests of Kopple ahead of the Schick defendants. Therefore, the Schoneman third-party defendants' Motion For Summary Judgement is denied as to the remainder of the Schick defendants' claims contained in Count II and Count III.

## *III. CONCLUSION*

For the reasons discussed above, the Schick defendants' Motion For Summary Judgment is granted. The court initially concludes that the letter of intent was not a binding contract and that the Schick defendants' Motion For Summary Judgment is granted as to Count I of the Second Amended Complaint. The court further concludes that it can determine as a matter of law that no oral contract existed. Thus, the Schick defendants' Motion for Summary Judgment is also granted as to Count II of the Second Amended Complaint. Moreover, given that the court has concluded that no genuine issues of material fact exist as to whether either a written or an oral contract exists between the Schick defendants and Kopple, the court concludes, as a matter of law, that Kopple cannot prevail on his claim for breach of an implied covenant of good faith and fair dealing. Thus, the Schick defendants' Motion for Summary Judgment is also granted as to Count III.

With respect to the Schoneman third-party defendants' Motion For Summary Judgment, for the reasons set out above, that motion is granted in part and denied in part. The court concludes that the granting of summary judgment in the Schick defendants' favor on the breach of contract claim against them renders moot their claim against the Schoneman third-party defendants for not informing them that the letter of intent was a binding contract. Therefore, the court grants the Schoneman third-party defendants' Motion For Summary Judgment as to Count I of the First Amended Third-Party Complaint and those parts of Counts II and III of the First Amended Third-Party Complaint which are grounded on assertions that the Schoneman third-party defendants were negligent or breached a fiduciary duty by informing the Schick defendants that the letter of intent was a non-binding document and failed to properly explain the legal ramifications of the letter of intent. The court further concludes that the remaining claims against the Schoneman third-party defendants are not wedded to the dispute over whether Greg Schoneman told the

Schick defendants that the letter of intent was not binding. Specifically, viable issues of controversy still exist over: whether Greg Schoneman was negligent in the drafting of the letter of intent; whether Greg Schoneman failed to adequately advise the Schick defendants regarding his dual agency; whether Greg Schoneman disclosed his relationship with Kopple; and, whether, as a result of Greg Schoneman's relationship with Kopple, he placed the interests of Kopple ahead of the Schick defendants. Therefore, the Schoneman third-party defendants' Motion For Summary Judgement is denied as to the remainder of the Schick defendants' claims contained in Count II and Count III.

**IT IS SO ORDERED.**

**DATED** this 24th day of August, 2006.

MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA